May it please the Court, Ms. Garlotta. I'm Sean McCrae representing Mr. McCadden. The government has conceded error in the imposition of the $126,000 in restitution and does not oppose remand in this case. So, of course, we are asking this Court to remand the case. And given that there will be remand on the restitution issues, we also ask the Court to remand the case on the other issues for open sentencing. This is based on two reasons. The first is the law, United States v. Loriente, which I've been practicing saying since I cited it to the Court this morning. When there is an error in sentencing, the Court remands it for review of everything. Well, error in sentencing or error in determining restitution, because restitution is different from sentencing, is it not? It can be, but it wasn't in this case, which gets to my second point. And the second point is that for Judge Aiken, this was all part of the whole thing. Her restitution was not a separate issue. As the Court knows, we had three separate hearings in this case in February and two in May. And part, a great part of the concern that the Court had, and wrestling with the appropriate sentence in this case, had to do with what she was going to do in terms of restitution. And if the Court looks to the excerpt at page 122, Judge Aiken specifically said, what I would say is to the extent that everybody thinks that just simply bifurcating the restitution is an acceptable breakout of how to do a sentencing, what I try to do is look holistically at what are all of the component pieces that go together, because I'm going to tip my hand and say that I'm going to stand with you in terms of other components of the sentencing that, when placed together and in context, does the best job the Court can do to substantiate what's required under the guidelines and advisory calculations, and she goes on to page 123. But wasn't she referring to the tradeoff between the actual period of time in custody versus a lifetime of supervision? And so she departed downward on incarceration time, but extended, imposed lifetime supervisory leave. She talks about that, but what she says, Judge, is simply bifurcating the restitution as being an acceptable breakout, and she didn't do that here. What she did was she put it all together and she determined it all together. And I recognize that in asking the Court to remand this for open sentencing, there's a significant risk to Mr. McCadden, because if Judge Aiken is no longer in a position to impose a restitution that she did, then she may well, under open sentencing, decide to change the amount of time that Mr. McCadden receives. So be careful what you ask for. I agree, it's be careful what you wish for, but it seems appropriate here to do. Do you think you're going to do better in terms of the actual amount of time in custody? I'm sorry? Do you think you're going to do better and get a lower prison sentence after she's already departed downward? I'm going to try. Okay. There was extraordinary rehabilitation in this case. And one of the difficulties was that Judge Aiken was intensely focused on the harm and damage to children, which is understandable. But one of the things that she said, and it's at page 142 of the excerpt, and her sort of overarching theme in the matter was that it was important that a message go out, that the damage done to children for the making of these horrific photos and somehow somebody has to stop it. And that's what she was focused on, and that's part of the concern concerning the issue of the subset of reasonableness, is that she did say that she recognized that he had gone to treatment and that he had had evaluations, and she understood that, but it is our position that under cases like Pepper v. United States, that the court has to do the sentence to fit the defendant and not the crime, and to look at the defendant as the defendant stands before the court, that she didn't, for whatever reason, have or make an adequate opportunity to look at these issues. So it is my hope that I can convince her on remand for a lesser sentence. So that's what the defense is asking for.  Okay. Let's hear from the government. Thank you, Your Honor. Counsel, my name is Anne Marie Scarlata, and I'm here on behalf of the government. I would first address some of the issues that were just raised, if the Court, unless the Court has specific questions. Well, you conceded the remand on the restitution order, so I don't think we need to hear anything further on that. But I'm intrigued by Ms. McRae's argument that what she really wants is an open remand so that she can revisit all of the 3553A issues as they relate to the sentence that the Court imposed. I think the Court can see from the record in this case, the three sentencing hearings, that the Court, the district court below, did spend substantial time considering all of the arguments raised by both parties, including defendants as counsel termed it, extraordinary rehabilitation or his efforts after the search warrant and his activities came to light. The government's brief notes, the Court's specific recitation of all of the 3553 factors that a court is required to review an imposing sentence, and at the very start of the very first sentencing hearing, in fact, it's at the excerpt of record page 3, the Court mentions, I've reviewed all of your materials. I know these materials inside and out, she actually says, and I think that's correct. And it shows throughout the sentencing transcripts here that she was intimately familiar with all of the issues. With regard to the other two, why did it take three separate sentencing hearings in order to get here? One issue with that was actually had to do with the images that would substantiate the restitution claims by the three victims below. So the court wanted to actually felt that if she was going to be crafting a restitution and having to decide how much money to impose per image or what her approach was going to be, that she should actually look at the images and the videos that depicted those particular victims so that she could properly craft. And there was confusion as to whether the court wanted the actual images so she could view them, because a lot of times courts don't necessarily want to look at the images versus do they want a written description. And here the judge wanted pretty much all of it, I think, although at different  Kennedy, she wanted to actually examine the evidence in fashioning an appropriate sentence or an appropriate restitution. That was for the purpose of restitution, actually. That was her specific purpose. So with the restitution award now being vacated, is it your position that that would not affect how she crafted the rest of the sentence? Your Honor, I think Judge Tallman was correct when he indicated that the judge's reference to a tradeoff in determining the sentence here was as between a tradeoff in terms of departing below the guideline range for term of imprisonment versus a life term of supervised release. I don't think that the judge was necessarily thinking that restitution was the tradeoff in this particular case. Because restitution, although part of a sentence, is separate from the other considerations in many ways, and particularly in this case. And so the context, what the Court was struggling with at that particular time was between the government's request for actually a high-end guideline sentence, the probation recommendation, which I believe was a low-end sentence, and the defendant's request for a 60-month, the mandatory minimum on one of the counts. And so there was a huge difference there that she had to decide between. Well, I – what really, as I say, intrigues me about Ms. McRae's argument is I've never thought about the issue of whether or not restitution is a separate component of the Court's responsibilities at sentencing or whether it is part and parcel of the sentence itself. And Congress obviously imposed on the district courts under, what was it, the Victim and Witness Protection Act, I think is where the restitution provision is found, a new obligation which didn't exist when I was practicing in a criminal court. And my understanding of the congressional intent at the time was that we were overlooking the harm to the victim which needed to be addressed by money compensation, or at least we needed to hear from the victims in order to fully assess and fashion an appropriate sentence for the defendant. But I've never thought of it as a driver of the actual sentence. In other words, is there a correlation between quantification of the amount of restitution versus the amount of time we're going to impose on the defendant? And I think Ms. McRae's argument is that they're intertwined. And I think that is the argument that Ms. McRae advances here. But the government's not aware of cases actually specifically discussing the nexus between the two, so restitution as a component of the sentence to be considered along with all of the other factors. All that being said, it, you know, nature and circumstances of the offense are – is a 3553a factor that a court would consider in determining a jail term. And so I think it's arguable that the harm to the victim – but I don't – it gets odd because then when you're talking about the harm to the victim, that's got a dollar amount on it. And it's just anathema in general, I think, to overall fairness to start thinking about dollar amounts when we're thinking about the purposes of sentencing set forth in the 3553 factor. So – but in terms of a remand on the issue of restitution, essentially opening the door for a remand on the sentence, I think – I don't think that would be appropriate here. I think, for instance, in Apodoca, this Court on Abusive Discretion Review affirmed a life term of supervised release. And I think it's the life term of supervised release that a defendant would hope to have the Court reconsider below. So that was affirmed there on abusive discretion for just possession of child pornography. This defendant was convicted of five counts of distribution of child pornography and two counts of receipt and a count of possession. And so if on abuse of discretion review in Apodoca, life term of supervised release is not substantively unreasonable, then it would be difficult, I think, to argue that it is substantively unreasonable on plain error review on a defendant convicted of elevated offenses. If I could make Mr. Cray's argument for her, as I understand it, her position is that it's actually a procedural error, because if the court erred in the amount – in determining the amount of restitution, and there is a nexus between restitution and the fashioning of an appropriate sentence, then there was procedural error in the calculation of the sentence. And so if we remand on restitution, we ought to do it on an open record so that the court can reconsider everything anew in what now amounts to a fourth sentence. Sure. Although, I don't – I don't think Ms. McCrae cited any – I'm not aware of any authority for the proposition that there is this particular type of nexus between restitution, although – But the other way to look at it is, you know, I mean, what's the harm in an open remand? That's one way – I think that's the way the defense at least looks at it. But let me ask this more specific question. At the sentencing hearings before the district court, was there any argument or proof or anything like that with respect to the defendant's ability to pay? Was that an issue or not? That was not an issue, Your Honor. Not an issue. So – so your – I'll call it confession of errors only that under subsequent case law, you know, the amounts weren't – weren't sufficiently, you know, calculated in the right way, right, with respect to individual victims. And then there may have been restitution to someone who was not a victim. So in a sense, those decisions don't directly impact the – impact the sentence except that, you know, if we send back only to recalculate the restitution, restitution could be more or less, but there was no controversy about whether the defendant had the ability to pay. So it – it – an argument could be made. It doesn't directly impact that part of the sentence that, you know, impacts the defendant. You know what I mean? It's more an impact on the victims and other people so that in – in this case, at least, it's easier to set aside this being the restitution as not being an integral part of the sentence. See, I could see where, you know, there was some dispute about, well, you know, did the defendant have the ability to pay this much? And district courts said, well, you know, it could be borderline, but I'm doing this as a favor to him because otherwise I'd give him two more years. You know, if there were that kind of a colloquy, then you might think it's a part of the sentence overall. But from what you're saying, there wasn't anything like that in this case. Is that right? That's correct, Your Honor. And I see that I only have 15 seconds left, so I'll finish answering your question. But you are correct that in the court below, there – there was not discussion and the district court did not appear to be considering anything about trading off the term, the supervised release or jail term, on account of the defendant's ability or inability to pay a restitutionary amount. And with that, the government would submit. All right. Ms. McCrae, I think you've got about 5 minutes left if you need that much time. All right. Well, you've got it if you want it. You made the better argument for me than I made, Your Honor. Well, you got me thinking. But just a couple of points to follow up. First, I disagree with Ms. Scarlatta about the purpose of all the hearings. One of the things Judge Aiken was wrestling with was the restitution. But it was not divorced from the issue of what sentence in its entirety she intended to oppose on Mr. McCadden. What do you mean when you say she was wrestling with it? I mean, what did she say on the record about it? She said to us that she wanted us – she gave us homework after the – I believe it was the first hearing, the February hearing – gave us homework and told us that she wanted us to go and think outside the box concerning restitution and how to approach this and to provide the Court with some kind of creative suggestions. And I'm, of course, paraphrasing what she said. Who came up with the creative suggestion of $20,000 to NCMEC? I've never seen that before. That was Judge Aiken. Okay. So she was thinking outside the box. Well, apparently probation came up with it. It was put in the pre-sentence investigation report. The suggestions the defense made were things like making a donation to the CASA in Coos County or to the child abuse. So you actually offered as a suggestion that the defendant might make a donation? We did. We tried to come up with what I – and this was in discussion with Mr. McCadden what we thought would be creative and of assistance and things that would help with his community in Coos County. Is there anything in the record that you can point me to? Because I haven't considered this argument. That shows that the restitutionary award, which is under a separate statute given by the – issued by the judge, had a relationship or connection or affected the sentence on the other points under 3553. Can you point to any language or give me some sites in the record? What I can refer you to are two parts of the record, Your Honor. First, excerpt page 122, which is from, I believe, the second sentencing hearing. And that was what I had quoted to the Court earlier about the – Judge Aiken talking about everybody thinks that just simply bifurcating the restitution is an acceptable breakout of how to do sentencing. What I try to do is to look holistically at all the component pieces. Okay. And what's the other one? And the second one is at excerpt 117. And Judge Aiken talks about the government has stood up over and over again, wanted the Court to go to the high end of the guidelines, which is 262 months. Defendant's position is a 60-month sentence is a substantial sentence, blah, blah. And then she says, and both – both are extremes, both are important advocacy positions, but I am going to look at the sentence in this case in the context of the entire sentence. And then she says, and so I want to turn my analysis on the restitution component. So she – she – over and over, it appears in her mind this was all part and parcel. And she did not impose a sentence on Mr. McAdam and then say, okay, we're going to deal with the restitution issue in the rest of these hearings. She did not decide on a sentence until she put it all together. So these are the two sites that you think are the most helpful to the nexus. And opposing counsel says there's no case that she's aware of on point that – that supports your proposal here. Is that correct? Do you have a case you can cite to us? I don't have a case I can cite to you this morning. All right. Thank you. Thank you both very much. That's an interesting argument. United States v. McAdam is submitted for decision.
judges: Tashima, Tallman, Ikuta